UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON MENDEL, an individual | No.  2:19-cv-00216-TLN-JDP |
| Plaintiff, | |
| v. | **ORDER** |
| SOUTHERN MONO HEALTHCARE DISTRICT dba MAMMOTH HOSPITAL, a public entity; MARK LIND, an individual; DOES 1 THROUGH 100 inclusive, | |
| Defendant. | |

This matter is before the Court on Defendant Southern Mono Healthcare District dba Mammoth Hospital's ("Defendant") Motion for Summary Judgment against Plaintiff Clayton Mendel ("Plaintiff").  (ECF No. 25.)  Plaintiff filed an opposition.  (ECF No. 26.)  Defendant filed a reply.  (ECF No. 28.)  For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED.

///

///

///

///

///

1

1        **I.        FACTUAL AND PROCEDURAL BACKGROUND**

2            Defendant owns and operates Mammoth Hospital (the "Hospital") in Mammoth Lakes,

3    California.  (ECF No. 26-1 at 2.)  Defendant is a public entity organized under the Local Health

4    Care District Law, California Health and Safety Code §§ 32000, *et seq.*  (*Id.*)  Plaintiff began his

5    employment with the Hospital on August 25, 2008 as a Server Administrator.  (*Id.*)

6            Mark Lind has acted as the Hospital's Chief Information Officer since 2016, and prior to

7    that position he was the Hospital's IT Director.  (*Id.*)  Mr. Lind was Plaintiff's supervisor during

8    the entirety of Plaintiff's employment with the Hospital.  (*Id.*)

9            On December 28, 2016, Aleks Mendel, Plaintiff's wife, contacted Sarah Vigilante, then

10   the Hospital's Human Resources Manager, and Olivia Moffett, the Hospital's Benefits

11   Coordinator, by separate emails.  (*Id.* at 13, 17.)  In this email to the Hospital's Human Resources

12   staff, Ms. Mendel indicated she and Plaintiff were "planning on starting a family" and asked

13   questions about insurance coverage.  (*Id.* at 17.)  Ms. Mendel was not pregnant at the time of the

14   email.  (*Id.*)  On December 28 and 29, 2016, Ms. Moffett responded to Ms. Mendel's email.[1]  (*Id.*

15   at 17–18.)  Ms. Moffett's email exchanges with Ms. Mendel on December 28 and 29, 2016 were

16   the only times Ms. Moffett ever had any communication with Ms. Mendel regarding Ms.

17   Mendel's plans or desire to start a family.  (*Id.* at 18.)

18           On January 2, 2017, Ms. Vigilante responded to Ms. Mendel's December 28, 2016 email.

19   (*Id.*)  After the email exchange beginning on December 28, 2016, Ms. Vigilante had no further

20   communications with Ms. Mendel.  (*Id.*)

21           In January 2017, Ms. Vigilante was promoted to the Hospital's Human Resources

22   Director.  (*Id.* at 11.)  In July 2017, Ms. Vigilante first became aware Plaintiff would potentially

23

24   ─────────────────

25   [1]        Defendant's separate statement indicates Ms. Moffett corresponded with Ms. Mendel on
     December 28 and 29, 2016 and December 29, 2019, and Plaintiff does not dispute these facts.
26   (ECF No. 26-1 at 17–18.)  The Court has reviewed Ms. Moffett's declaration, which includes Ms.
     Moffett's emails with Ms. Mendel, and the undisputed evidence shows Ms. Moffett's email
27   correspondence with Ms. Mendel occurred on December 28 and 29, 2016, and not on December
     29, 2019.  (ECF No. 25-7 at 6–10.)

28

be laid off when she received an email from Mr. Lind.[2]  (*Id.* at 12.)  Thereafter, Mr. Lind made a final decision to lay off Plaintiff, with Ms. Vigilante playing a role in implementing the layoff.[3]  (*Id.* at 10, 12–14.)  On December 20, 2017, Ms. Vigilante emailed the Hospital's attorney, in which she stated in part, "we will be eliminating the position for Clayton Mendel, Server Administrator."  (*Id.* at 12.)  On or around December 20, 2017, Mr. Lind and Ms. Vigilante discussed the timing of notifying Plaintiff of his layoff and determined January 5, 2018 would be the best day to have the layoff meeting.[4]  (*Id.*)  At some point shortly after December 21, 2017, Mr. Lind and Ms. Vigilante decided to hold the termination meeting on January 4, 2018.  (*Id.* at 13.)

On January 3, 2018, Plaintiff informed Mr. Lind that Ms. Mendel was pregnant.[5]  (*Id.*)  At no time prior to January 3, 2018 did Plaintiff tell Mr. Lind he intended to take leave if Ms. Mendel became pregnant.  (*Id.* at 15.)  Later on January 3, 2018, Mr. Lind informed Ms. Vigilante that Plaintiff had told him that Ms. Mendel was pregnant.  (*Id.* at 13.)  January 3, 2018

---

[2]      Defendant asserts it is undisputed Ms. Vigilante first became aware Plaintiff would likely be laid off in July 2017 due to an email from Mr. Lind.  (ECF No. 25-2 at 6.)  Plaintiff claims this fact is disputed by stating Ms. Vigilante understood Plaintiff was potentially going to be laid off, and the layoff was not a hundred percent certain.  (ECF No. 26-1 at 12.)  Therefore, it is undisputed Ms. Vigilante first became aware Plaintiff would potentially be laid off in July 2017 due to an email from Mr. Lind.

[3]      While Plaintiff disputes the specific timing of Mr. Lind's termination decision, Plaintiff does not dispute it was Mr. Lind who made a final decision to terminate Plaintiff.  (*See* ECF No. 26-1 at 10.)

[4]      Plaintiff disputes Defendant's fact that on or around December 20, 2017, Mr. Lind and Ms. Vigilante discussed the timing of notifying Plaintiff of his layoff and determined January 5, 2018 would be the best day for the layoff meeting.  (ECF No. 26-1 at 12.)  However, Plaintiff fails to identify any evidentiary support for the dispute and therefore this fact is undisputed.  *See Hayes v. Nw. Pallet Servs. LLC*, No. 5:19-cv-00936-AB (KKx), 2020 WL 10431814, at *4 (C.D. Cal. Sept. 18, 2020) (finding factual disputes meritless when lacking evidentiary support).

[5]      Defendant asserts it is undisputed Plaintiff informed Mr. Lind that Ms. Mendel was pregnant on January 3, 2018.  (ECF No. 25-2 at 7.)  Plaintiff does not dispute he informed Mr. Lind that Ms. Mendel was pregnant on January 3, 2018.  (ECF No. 26-1 at 13.)  Instead, Plaintiff disputes Defendant's fact in part by contending Plaintiff also informed Mr. Lind that Plaintiff would be taking leave when Ms. Mendel was due.  (*Id.*)  Thus, it remains undisputed Plaintiff informed Mr. Lind that Ms. Mendel was pregnant on January 3, 2018.

1  was the first time Ms. Vigilante learned Ms. Mendel was pregnant.  (*Id.*)

2  On January 4, 2018, Mr. Lind and Ms. Vigilante met with Plaintiff and informed Plaintiff

3  he was being laid off.  (*Id.* at 14.)

4  Slavka Crouthamel has been the Controller in the Hospital's Accounting Department since

5  2013.  (*Id.* at 16.)  On December 29, 2017, Ms. Crouthamel attended a party where she saw

6  Plaintiff's mother, and Ms. Crouthamel congratulated Plaintiff's mother on Ms. Mendel's

7  pregnancy.  (*Id.*)  Ms. Crouthamel did not have any input or participation in the decision to lay off

8  Plaintiff.  (*Id.* at 17.)

9  On February 4, 2019, Plaintiff filed the instant action against Defendant and Mr. Lind.

10  (ECF No. 1.)  Plaintiff's Complaint asserts eight causes of action: (1) interference with and failure

11  to provide leave in violation of the FMLA under 26 U.S.C. § 2615(a); (2) retaliation in violation

12  of the FMLA under 26 U.S.C. § 2615(b); (3) interference with and failure to provide leave in

13  violation of California Government Code §§ 12945.2, *et seq.*; (4) sex discrimination in violation

14  of California Government Code §§ 12940, *et seq.*; (5) retaliation in violation of California

15  Government Code §§ 12940, *et seq.*; (6) failure to prevent and investigate discrimination in

16  violation of California Government Code §§ 12940(j)–(k); (7) wrongful termination in violation

17  of public policy; and (8) intentional infliction of emotional distress.  (*Id.* at 6–12.)  On April 4,

18  2019, the Court dismissed Mr. Lind without prejudice, (ECF No. 7), following Plaintiff's notice

19  of voluntary dismissal, (ECF No. 6).  Defendant filed the instant motion for summary judgment

20  on April 13, 2021.  (ECF No. 25.)  Plaintiff filed an opposition on May 13, 2021.  (ECF No. 26.)

21  Defendant filed a reply on May 20, 2021.  (ECF No. 28.)

22  **II.     STANDARD OF LAW**

23  Summary judgment is appropriate when the moving party demonstrates no genuine issue

24  of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

25  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

26  judgment practice, the moving party always bears the initial responsibility of informing the

27  district court of the basis of its motion, and identifying those portions of "the pleadings,

28  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence

1    of the opposing party is to be believed and all reasonable inferences that may be drawn from the

2    facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

3    at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

4    obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

5    *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

6    1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

7    "must do more than simply show that there is some metaphysical doubt as to the material facts."

8    *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead

9    a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at

10   587.

11        **III.   ANALYSIS**

12        Defendant moves for summary judgment on all of Plaintiff's claims on several grounds.

13   (ECF No. 25-1.)  As to Plaintiff's first through third claims under the FMLA and California

14   Family Rights Act ("CFRA"), Defendant argues the requisite causal connection does not exist.

15   (*Id.* at 14–20.)  For Plaintiff's fourth and fifth claims for California Fair Employment and

16   Housing Act ("FEHA") discrimination and retaliation, Defendant argues Plaintiff cannot establish

17   a prima facie case, and Defendant had a legitimate, nondiscriminatory, and nonretaliatory reason

18   for terminating Plaintiff.  (*Id.* at 20–23.)  As to Plaintiff's sixth claim for failure to prevent

19   discrimination, Defendant argues there was no underlying discrimination.  (*Id.* at 23–24.)  For

20   Plaintiff's seventh and eighth claims for wrongful termination in violation of public policy and

21   intentional infliction of emotional distress, Defendant argues these claims cannot be maintained

22   against a public entity like Defendant.  (*Id.* at 24–25.)  Defendant further argues for Plaintiff's

23   eighth claim that there was no outrageous conduct and the factual predicate in Plaintiff's

24   Complaint is inaccurate.  (*Id.* at 25.)  In opposition, Plaintiff only addresses his first claim for

25   FMLA interference.  (ECF No. 26 at 2, 5–6.)  The Court will address the parties' arguments in

26   turn.

27   ///

28   ///

6

1            A.      Evidentiary Objections

2        As a preliminary matter, the Court will address Defendant's evidentiary objections, (ECF

3  No. 28-5), but only to the extent necessary to resolve the instant motion.  *See Irigaray Dairy v.*

4  *Dairy Emps. Union Loc. No. 17 Christian Lab. Ass'n of the United States of Am. Pension Tr.*, 153

5  F. Supp. 3d 1217, 1234 (E.D. Cal. 2015).

6        The only objection the Court relied on in its ruling is Defendant's objection to the Kim

7  Pham deposition transcript.  Plaintiff has cited to Ms. Pham's deposition transcript to argue Ms.

8  Pham, a Hospital employee, learned of Ms. Mendel's pregnancy by word of mouth through

9  mutual friend Ms. Crouthamel.  (ECF No. 26-1 at 5.)  Defendant argues the cited portion of Ms.

10  Pham's deposition transcript is incomplete and misleading and requires the additional portion of

11  Ms. Pham's deposition testimony that Defendant submits with its reply.  (ECF No. 28-5 at 4.)

12        The "rule of completeness provides that where one party introduced all or part of a writing

13  or recorded statement, the other party may introduce any other part that 'in fairness ought to be

14  considered at the same time.'"  *U.S. Sec. Holdings, Inc. v. Andrews*, No. CV 21-2263 DSF

15  (MRWx), 2021 WL 6882436, at *4 (C.D. Cal. Dec. 24, 2021) (quoting Fed. R. Evid. 106)).

16        The Court has reviewed the portion of Ms. Pham's deposition transcript cited by Plaintiff,

17  (ECF No. 26-2 at 24–25), as well as the portion cited by Defendant, (ECF No. 28-4 at 30–32).

18  The portion cited by Defendant makes clear Ms. Pham testified that she does not know if she

19  learned of Ms. Mendel's pregnancy from Ms. Crouthamel.  (*Id.* at 32.)  Therefore, the Court will

20  consider the portion of Ms. Pham's deposition testimony submitted by Defendant with its reply in

21  accordance with the rule of completeness.

22            B.     Claim One: Interference with and Failure to Provide Leave in Violation of

23                  the FMLA Under 26 U.S.C. § 2615(a)[6]

24        Defendant argues summary judgment is appropriate on Plaintiff's FMLA interference

25  claim because the required causal connection does not exist.  (ECF No. 25-1 at 17.)  More

26  _____

27  [6]     Defendant argues Plaintiff's first and second claims under the FMLA are duplicative.
(ECF No. 25-1 at 15.)  While Plaintiff's first and second claims are based upon the same factual
allegations, the Complaint identifies two distinct statutory bases for his first and second claims.

28  (*See* ECF No. 1 at 6–8.)  Therefore, the Court concludes Claims One and Two are not duplicative.

specifically, Defendant argues: (1) no act protected by the FMLA served as a "negative factor" in the decision to lay off Plaintiff, which was made before January 3, 2018, and without knowledge of any entitlement or likelihood of leave; and (2) the decision to lay Plaintiff off was made for reasons unrelated to his wife's pregnancy or any leave request or discussion. (*Id.* at 17, 19.)  In opposition, Plaintiff argues the causal connection has been established because: (1) there was a possibility of the Hospital laying off Plaintiff, but after Plaintiff notified Mr. Lind he was going out on leave Plaintiff was terminated; (2) the Hospital still needed Plaintiff's job position after Plaintiff's termination; (3) days after Plaintiff was terminated the Hospital posted a job opening Plaintiff was qualified for, but the Hospital never offered Plaintiff the job; and (4) other Hospital employees knew of Ms. Mendel's pregnancy.  (ECF No. 26 at 2, 5–6.)  Although not mentioned in Plaintiff's opposition, Plaintiff also makes arguments related to Ms. Mendel's December 2016 email in Plaintiff's separate statement of undisputed facts.  (ECF No. 26-1 at 17–20.)

  "To prevail on an FMLA interference claim, a plaintiff must establish 'by a preponderance of the evidence that h[is] taking of FMLA-protected leave constituted a negative factor in the decision to terminate h[im].'"  *Swan v. Bank of Am.*, 360 F. App'x 903, 906 (9th Cir. 2009) (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001)).  Therefore, the plaintiff must be able to establish his termination was causally related to the plaintiff requesting or taking FMLA leave.  *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003) (finding a triable issue of material fact existed as to whether the defendant considered the plaintiff's FMLA leave as a factor in the plaintiff's termination); *Swan*, 360 F. App'x at 906 (noting the plaintiff could not establish her termination was causally related to her FMLA leave).

  Temporal proximity between the plaintiff's termination and his use of or request to use FMLA leave may give rise to an inference of causation in a FMLA interference claim.  *Xin Liu*, 347 F.3d at 1137.  However, temporal proximity "must be considered in light of the 'surrounding circumstances.'"  *Williams v. G&K Servs., Inc.*, 774 F. App'x 369, 371 (9th Cir. 2019) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003)).  Therefore, temporal proximity cannot establish the causal connection when the defendant's decision to terminate the plaintiff

1  was made before the plaintiff invoked his FMLA rights.  *Reif v. Shamrock Foods Co.*, 727 F.

2  App'x 302, 303 (9th Cir. 2018); *Law v. Kinross Gold U.S.A., Inc*, 651 F. App'x 645, 648 (9th Cir.

3  2016).

4         Defendant asserts the undisputed evidence shows Mr. Lind made a final decision to lay off

5  Plaintiff sometime between July 2017 and early December 2017.  (ECF No. 25-2 at 6.)  Plaintiff

6  contends this fact is disputed, (ECF No. 26-1 at 10), and Plaintiff's sole evidentiary support is a

7  paragraph in Plaintiff's declaration stating, "I was terminated after I told Mr. Lind that me [sic]

8  my wife and I were expecting a child and that I would be taking time off when the baby was

9  born," (ECF No. 26-3 at 2).

10        While Plaintiff was terminated on January 4, 2018 after his January 3, 2018 discussion

11  with Mr. Lind, this does not call into dispute Defendant's evidence showing Mr. Lind made a

12  final decision to terminate Plaintiff sometime between July 2017 and early December 2017.

13  Plaintiff's evidence concerns the timing of when Mr. Lind carried out Plaintiff's termination, and

14  not the timing of when Mr. Lind made the decision to terminate Plaintiff.  *See Valentich v. United*

15  *States*, 194 F. Supp. 3d 1033, 1036 (E.D. Cal. 2016) (in a summary judgment motion "it is the

16  opposing party's obligation to produce a factual predicate from which [an] inference may be

17  drawn").  Therefore, it is undisputed Mr. Lind made a final decision to terminate Plaintiff

18  sometime between July 2017 and early December 2017.

19        Defendant further argues the undisputed evidence shows January 3, 2018, was the first

20  time Mr. Lind learned Ms. Mendel was pregnant.  (ECF No. 25-2 at 8.)  Plaintiff contends this

21  fact is disputed and argues Ms. Pham learned of Ms. Mendel's pregnancy through Ms.

22  Crouthamel with a citation to Ms. Pham's deposition transcript.  (ECF No. 26-1 at 13.)  In

23  response, Defendant provides an additional portion of Ms. Pham's deposition transcript in which

24  Ms. Pham testifies she does not know if she learned of Ms. Mendel's pregnancy from Ms.

25  Crouthamel.  (ECF No. 28-1 at 24; ECF No. 28-4 at 32.)

26        The Court finds Plaintiff's evidence fails to dispute the fact and evidence proffered by

27  Defendant.  Plaintiff's argument Ms. Pham learned of Ms. Mendel's pregnancy through Ms.

28  Crouthamel is contradicted by Ms. Pham's deposition in which she testified she does not know if

she learned of Ms. Mendel's pregnancy from Ms. Crouthamel.  (ECF No. 28-4 at 32.)  Moreover, Defendant's fact concerns Mr. Lind's knowledge of Ms. Mendel's pregnancy, but Plaintiff's evidence makes no connection between Ms. Pham's knowledge and Mr. Lind's knowledge.  *See Valentich*, 194 F. Supp. 3d at 1036 ("inferences are not drawn out of the air" when resolving a summary judgment motion).

Accordingly, the undisputed evidence shows Mr. Lind made a final decision to terminate Plaintiff sometime between July 2017 and early December 2017 and Mr. Lind first learned Ms. Mendel was pregnant on January 3, 2018.[7]  Plaintiff also does not dispute that on December 20, 2017, Ms. Vigilante stated the Hospital would be eliminating Plaintiff's position and that January 3, 2018 was the first time Ms. Vigilante learned Ms. Mendel was pregnant.  (ECF No. 26-1, at 12–13.)  It is also undisputed that on or around December 20, 2017, Mr. Lind and Ms. Vigilante discussed the timing of notifying Plaintiff of his layoff and decided on January 5, 2018 for the layoff meeting,[8] (*id.* at 12), before Mr. Lind and Ms. Vigilante decided to instead hold the meeting on January 4, 2018, (*id.* at 13).

It is therefore undisputed the following occurred before Mr. Lind or Ms. Vigilante learned Ms. Mendel was pregnant: (1) Mr. Lind made a final decision to terminate Plaintiff; (2) Ms. Vigilante stated Plaintiff's position would be eliminated; and (3) Mr. Lind and Ms. Vigilante discussed when to set the meeting to notify Plaintiff of his termination and picked a meeting date. Therefore, Mr. Lind's final decision to terminate Plaintiff and Ms. Vigilante's role in implementing the termination could not have been influenced by their learning of Ms. Mendel's pregnancy.[9]  *See Reif*, 727 F. App'x at 303 ("[The defendant] made the decision to terminate

---

[7]    The undisputed evidence showing Mr. Lind made a final termination decision no later than early December 2017, and before he learned of Ms. Mendel's pregnancy, defeats Plaintiff's argument that there was only a possibility of Plaintiff being laid off until Mr. Lind learned Plaintiff intended to take leave due to Ms. Mendel's pregnancy.

[8]    While Plaintiff facially disputes this fact, (ECF No. 26-1 at 12), the Court has determined *infra* this fact to be undisputed due to Plaintiff's failure to identify any evidentiary support for the dispute.

[9]    Plaintiff argues causation exists because the Hospital needed Plaintiff's job position after his termination and the Hospital later posted a job opening Plaintiff was qualified for, but never

10

1  [plaintiff] before [plaintiff]invoked his FMLA rights.  Therefore, [defendant]'s decision to

2  terminate could not have been influenced by [plaintiff]'s FMLA request, and [plaintiff] has failed

3  to raise a genuine issue of material fact on these claims."); *Law*, 651 F. App'x at 648 (affirming

4  summary judgment on the plaintiff's FMLA interference claim where the evidence showed the

5  defendant had set the plaintiff's discharge in motion months before the plaintiff's unanticipated

6  hospitalization and need for leave).

7           Having found Mr. Lind made a final decision to terminate Plaintiff before Mr. Lind and

8  Ms. Vigilante first learned of Ms. Mendel's pregnancy, the Court proceeds by addressing

9  Plaintiff's causation arguments requiring further examination.

10                      i.      *Other Hospital employees' knowledge of Ms. Mendel's pregnancy*

11          Plaintiff argues other Hospital employees[10] knew of Ms. Mendel's pregnancy and Ms.

12  Pham learned of Ms. Mendel's pregnancy from Ms. Crouthamel.  (ECF No. 26 at 5.)  Defendant

13  argues Ms. Crouthamel did not convey any information about the pregnancy to Mr. Lind or Ms.

14  Vigilante until after Plaintiff's termination.  (ECF No. 28 at 9.)  Defendant also argues Ms. Pham

15  testified she did not know if Ms. Crouthamel told her about Ms. Mendel's pregnancy.  (*Id.*)

16          As discussed *infra*, it is undisputed that Mr. Lind and Ms. Vigilante did not know of Ms.

17  Mendel's pregnancy until after Mr. Lind made a final decision to terminate Plaintiff.

18  Additionally, the undisputed evidence shows Ms. Crouthamel and Ms. Pham[11] had no

19  involvement in the decision to terminate Plaintiff.  (ECF No. 26-1 at 17; ECF No. 28-4 at 39.)

20  Thus, even if Ms. Pham or Ms. Crouthamel knew of Ms. Mendel's pregnancy before Mr. Lind

21  made the final termination decision, this does not create a factual dispute.  *See Kelly v. Boeing*

22  ────────────────

23  offered Plaintiff the job.  (ECF No. 26 at 5–6.)  Even if Plaintiff's assertions were true, they do
   not create a factual issue of causation because the undisputed evidence shows Mr. Lind made the
24  final termination decision before he and Ms. Vigilante learned of Ms. Mendel's pregnancy.

25  [10]      Plaintiff's opposition identifies only Ms. Pham and Ms. Crouthamel in connection with
   Plaintiff's argument other employees in the Hospital knew of Ms. Mendel's pregnancy.  (ECF
26  No. 26 at 5.)

27  [11]      Plaintiff does not argue or submit any evidence that Ms. Pham had any involvement in the
28  termination decision.  (*See* ECF Nos. 26, 26-1.)

11

1    *Co.*, 848 F. App'x 692, 695 (9th Cir. 2021) (affirming summary judgment where "even if

2    [plaintiff] notified a supervisor of his intent to take [FMLA] leave, there is no evidence that the

3    decisionmaker in [plaintiff]'s termination had any knowledge of [plaintiff]'s intent to take

4    leave").

5                                    *ii.    Ms. Mendel's December 2016 email*

6              Although not mentioned in Plaintiff's opposition, Plaintiff makes arguments related to

7    Ms. Mendel's December 2016 email in Plaintiff's separate statement of undisputed fact.  (ECF

8    No. 26-1 at 17–20.)  Specifically, Plaintiff argues Ms. Mendel's December 2016 email was

9    addressed to Ms. Vigilante, Ms. Vigilante may have followed up with Ms. Moffett to see if Ms.

10   Moffett replied to Ms. Mendel's email, and Plaintiff believes Mr. Lind knew of the contents of

11   Ms. Mendel's email because the rumor and gossip mill at the Hospital is extensive.  (*Id.*)

12   Defendant argues Ms. Mendel's email did not state Ms. Mendel was pregnant and did not request

13   leave, Mr. Lind had no knowledge of the email, and the email is too remote in time to support

14   causation.  (ECF No. 25-1 at 18–19; ECF No. 28 at 7.)

15             Besides the requisite causal connection, a plaintiff alleging an FMLA interference claim

16   must establish he provided sufficient notice of his intent to take leave.  *Escriba v. Foster Poultry

17   Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014).  To constitute sufficient notice "[e]mployees

18   need only notify their employers that they will be absent under circumstances which indicate that

19   the FMLA might apply."  *Bachelder*, 259 F.3d at 1130.

20             Ms. Mendel's December 2016 email does not constitute the required notice under the

21   FMLA.  The email shows Ms. Mendel communicated she and Plaintiff were "looking to start a

22   family and [she] wanted to gather some more information about what [wa]s covered under the

23   [H]ospital's insurance for the entire pregnancy journey."  (ECF No. 25-7 at 6.)  The email does

24   not indicate Ms. Mendel was pregnant at the time — which she was not — nor does the email

25   indicate Plaintiff will be absent from work or that Plaintiff intends to take leave.  (*See id.* at 6–

26   10.)  Yet even if Ms. Mendel's 2016 email stated she was pregnant, this also would not constitute

27   sufficient notice of Plaintiff's intent to take leave.  *See Stevenson v. Hyre Elec. Co.*, 505 F.3d 720,

28   725 (7th Cir. 2007) (discussing the FMLA notice requirement and noting "it was not enough for

                                                      12

1    an employee to inform his employer that he needed leave because his wife was pregnant").

2    Because Ms. Mendel's December 2016 email does not constitute the required notice under the

3    FMLA, it cannot be used to establish the requisite causal connection.

4         Assuming Ms. Mendel's December 2016 email constituted sufficient notice, Plaintiff has

5    no knowledge the Hospital's Human Resources staff relayed any of the information in Ms.

6    Mendel's December 2016 email to Mr. Lind.[12]  Ms. Mendel's December 2016 email could not

7    have been a negative factor in Mr. Lind's decision to terminate Plaintiff when Plaintiff has not

8    produced any evidence that could be used to show Mr. Lind knew of Ms. Mendel's 2016 email or

9    the information contained therein.  *See Kelly*, 848 F. App'x at 695.

10        Additionally, even if Mr. Lind knew of Ms. Mendel's December 2016 email or its

11   contents, the email is too remote in time to support a finding of causation on its own.  The Ninth

12   Circuit has found a four-month period between an employee's return from FMLA leave and the

13   employee's termination is too remote in time to support a finding of causation premised solely on

14   temporal proximity.  *Swan*, 360 F. App'x at 906 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532

15   U.S. 268, 273 (2001) (per curiam); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th

16   Cir.2002)).  Approximately a year elapsed between Ms. Mendel's email and Plaintiff's

17   termination.  Additionally, at least six months elapsed between Ms. Mendel's email and when Mr.

18   Lind made a final decision to terminate Plaintiff.  This period is too long to establish causation

19   solely through temporal proximity.

20        Plaintiff has failed to raise a genuine issue of material fact as to whether any request to use

21   FMLA leave was a negative factor in the Hospital's decision to terminate him.  Accordingly, the

22   Court GRANTS Defendant's motion for summary judgment as to Plaintiff's first claim for

23

---

24   [12]     Plaintiff disputes Defendant's fact that Plaintiff has no knowledge the Hospital's Human
     Resources staff relayed any information contained in Ms. Mendel's December 2016 email to Mr.

25   Lind.  (ECF No. 26-1 at 20.)  However, Plaintiff's sole evidentiary support is his testimony that
     he believes Mr. Lind knew of the email or its contents because "the rumor and gossip mill at the

26   [H]ospital is extensive."  (*Id.*; ECF No. 26-2 at 9.)  Without any factual basis for Plaintiff's belief
     about Mr. Lind's knowledge, Plaintiff's testimony is mere speculation and insufficient to create a

27   genuine factual dispute.  *See Thompson v. Donahoe*, 961 F. Supp. 2d 1017, 1025 (N.D. Cal.
     2013) ("Speculation does not suffice to create a genuine factual dispute on summary judgment.").

28

1     interference in violation of the FMLA.

2            C.     Claim Two: Retaliation in Violation of the FMLA Under 26 U.S.C. §

3                2615(b)

4        Defendant argues Plaintiff's FMLA retaliation claim as alleged does not fall under any

5     FMLA anti-retaliation provision.  (ECF No. 25-1 at 14–15.)  Plaintiff does not address his

6     retaliation claim in his opposition.[13]  (*See* ECF No. 26.)

7        The anti-retaliation provision in 26 U.S.C. § 2615(b) provides a private right of action if

8     an employer "discharges or otherwise discriminates against [an employee] for filing a charge or

9     instituting a proceeding under the FMLA, for giving information in connection with a FMLA

10    inquiry or proceeding, or for testifying in any FMLA inquiry or proceeding."  *Bonzani v.*

11    *Shinseki*, No. CIV S-11-0007 EFB, 2011 WL 4479758, at *5 (E.D. Cal. Sept. 26, 2011); *see also*

12    *Bachelder*, 259 F.3d at 1124.

13        Plaintiff's Complaint does not make any allegation of a discharge or discrimination by

14    Defendant due to any FMLA-related charge, inquiry, or proceeding.  (*See* ECF No. 1.)  Plaintiff

15    does not argue in his opposition or provide any evidence he experienced a discharge or

16    discrimination by Defendant due to any FMLA-related charge, inquiry, or proceeding.  (*See* ECF

17    Nos. 26, 26-1.)  Therefore, Plaintiff has failed to provide the necessary evidence to establish his

18    second claim for FMLA retaliation and summary judgment is appropriate.  *See Boyd v. City of*

19    *Oakland*, 458 F. Supp. 2d 1015, 1043 (N.D. Cal. 2006) (granting summary judgment for the

20    defendant on a claim where the plaintiff failed to provide evidence to establish a foundational

21    element of the claim).  Accordingly, the Court GRANTS Defendant's motion for summary

22    judgment as to Plaintiff's second claim for retaliation in violation of the FMLA.

23    ///

24    ///

25    [13]     Plaintiff's failure to address Defendant's argument serves as Plaintiff conceding his
26    FMLA retaliation claim.  *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014) (finding the plaintiff's failure in his opposition brief to address the defendant's arguments served
27    as the plaintiff's concession of the relevant claim); *M.J.L.H. v. City of Pasadena*, No. CV 18-3249-JFW(SSx), 2019 WL 2249545, at *4 n.9 (C.D. Cal. May 24, 2019) (granting summary
28    judgment on a claim because the plaintiffs failed to address the claim in their opposition briefs).

1           D.      Claim Three: Interference with and Failure to Provide Leave in Violation

2                 of California Government Code §§ 12945.2, *Et Seq.*

3       Defendant argues Plaintiff's CFRA claim has the same factual underpinning as Plaintiff's

4 FMLA claim and is analyzed under the same standard, and therefore, Plaintiff's CFRA claim

5 lacks causation.  (ECF No. 25-1 at 15–16, 19–20.)  Plaintiff does not address his CFRA claim in

6 his opposition.[14]  (*See* ECF No. 26.)

7       The CFRA is found at California Government Code §§ 12945.2, *et seq.  See Escriba*, 743

8 F.3d at 1242.  "[I]dentical standards apply to the FMLA and CFRA."  *Id.* (citing *Xin Liu*, 347

9 F.3d at 1132 n.4, 1138).  Therefore, the Ninth Circuit has analyzed CFRA claims as arising under

10 the FMLA.  *Id.*; *Xin Liu*, 347 F.3d at 1132 n.4.

11       Plaintiff's CFRA claim is based on the same factual allegations as his FMLA claims.[15]

12 (*See* ECF No. 1 at 8.)  Therefore, where there is no genuine dispute of material fact as to

13 Plaintiff's FMLA claims, the same is true for Plaintiff's CFRA claim.  *See Canupp v. Children's*

14 *Receiving Home of Sacramento*, 181 F. Supp. 3d 767, 789 (E.D. Cal. 2016) (granting and denying

15 summary judgment on the plaintiff's CFRA claims for the same reasons as the court granted and

16 denied summary judgment on the plaintiff's FMLA claims).  Accordingly, the Court GRANTS

17 Defendant's motion for summary judgment as to Plaintiff's third claim for interference with and

18 failure to provide leave in violation of California Government Code §§ 12945.2, *et seq.*

19           E.      Claim Four: Sex Discrimination in Violation of California Government

20                 Code §§ 12940, *Et Seq.*

21       Defendant argues summary judgment is appropriate on Plaintiff's fourth claim under the

22 FEHA because the undisputed facts show no causation exists and the Hospital had a legitimate,

23

24    [14]      Plaintiff's failure to address Defendant's argument serves as Plaintiff conceding his CFRA

25 claim.  *See Mariscal*, 52 F. Supp. 3d at 984; *M.J.L.H.*, 2019 WL 2249545, at *4 n.9.

26    [15]      Plaintiff's Complaint includes one additional factual allegation for his CFRA claim that is
not present in his FMLA allegations.  The additional CFRA factual allegation is found in the last

27 sentence of Paragraph 42 of the Complaint.  (ECF No. 1 at 8.)  However, Plaintiff does not
dispute the last sentence of Paragraph 42 of the Complaint is not true with respect to Plaintiff.

28 (ECF No. 26-1 at 20.)  Therefore, Plaintiff has conceded this additional factual allegation.

nondiscriminatory reason for Plaintiff's termination.  (ECF No. 25-1 at 20.)  Plaintiff does not

address his FEHA sex discrimination claim in his opposition.[16]  (*See* ECF No. 26.)

The FEHA prohibits employers from discriminating against employees because of various

bases, including sex and gender.  Cal. Gov. Code § 12940(a).  "California has adopted the three-

stage burden-shifting test established by the United States Supreme Court for trying claims of

discrimination . . . ."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000).

> Under the three-part *McDonnell Douglas* test, the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination.  Once the plaintiff has done so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  If the employer articulates a legitimate reason, the plaintiff must raise a triable issue that the employer's proffered reason is pretext for unlawful discrimination.  The ultimate burden of persuasion remains with the plaintiff.

*Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (internal citations

omitted).

To establish a prima facie case of employment discrimination under the FEHA, the

plaintiff must:

> provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Guz*, 24 Cal. 4th at 355.  Although the "prima facie burden is not onerous," the plaintiff "must at

least show actions taken by the employer from which one can infer, if such actions remain

unexplained, that it is more likely than not that such actions were based on a prohibited

discriminatory criterion."  *Id.* (internal quotation marks and brackets omitted).

Plaintiff alleges in his Complaint that Defendant discriminated against him under the

FEHA by terminating him for requesting FMLA leave, and his gender was a motivating factor in

Defendant's conduct.  (ECF No. 1 at 9.)  The Court has found the undisputed evidence shows Mr.

---

[16]     Plaintiff's failure to address Defendant's argument serves as Plaintiff conceding his FEHA sex discrimination claim.  *See Mariscal*, 52 F. Supp. 3d at 984; *M.J.L.H.*, 2019 WL 2249545, at *4 n.9.

Lind made the final decision to terminate Plaintiff before Mr. Lind first learned of Ms. Mendel's pregnancy and any resulting need for leave by Plaintiff.  Where Plaintiff alleges there was discrimination because he requested FMLA leave and was then terminated, Plaintiff cannot create the inference it was more likely than not Defendant's actions were based on a prohibited discriminatory criterion when the decisionmaker — Mr. Lind — was unaware of Ms. Mendel's pregnancy and any resulting need for leave by Plaintiff at the time of the final termination decision.  *See Wong v. Wells Fargo Bank, N.A.*, No. 20-CV-00249-YGR, 2021 WL 4243398, at *7 (N.D. Cal. Sept. 17, 2021) ("[The] plaintiff cannot make a prima facie case where a decision-maker is unaware of the basis for the alleged discrimination.").  Therefore, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's fourth claim for sex discrimination in violation of California Government Code §§ 12940, *et seq.*

>  F.  Claim Five: Retaliation in Violation of California Government Code § 12940, *Et Seq.*

Defendant argues summary judgment is appropriate on Plaintiff's fifth claim for FEHA retaliation because the undisputed facts show no causation exists and the Hospital had a legitimate, nonretaliatory reason for Plaintiff's termination.  (ECF No. 25-1 at 20.)  Plaintiff does not address his FEHA retaliation claim in his opposition.[17]  (*See* ECF No. 26.)

The "FEHA makes it unlawful for an employer to 'discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'"  *Hicks v. Netflix, Inc.*, 472 F. Supp. 3d 763, 771 (C.D. Cal. 2020) (quoting Cal. Gov. Code § 12940(h)).  As with FEHA discrimination claims, FEHA retaliation claims are examined under the *McDonnell Douglas* burden-shifting test.  *Washington v. Cal. City Correction Ctr.*, 871 F. Supp. 2d 1010, 1027 (E.D. Cal. 2012).

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse

---

[17]  Plaintiff's failure to address Defendant's argument serves as Plaintiff conceding his FEHA retaliation claim.  *See Mariscal*, 52 F. Supp. 3d at 984; *M.J.L.H.*, 2019 WL 2249545, at *4 n.9.

1   employment action, and (3) a causal link existed between the protected activity and the

2   employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). "Essential to

3   a causal link is evidence that the employer was aware that the plaintiff had engaged in the

4   protected activity." *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 70 (2000).

5          In Plaintiff's Complaint, Plaintiff alleges no new factual allegations to support his FEHA

6   retaliation claim and instead bases it upon the allegations underlying Plaintiff's first through

7   fourth claims. (*See* ECF No. 1 at 10.) Therefore, any allegations of protected activity are limited

8   to: (1) Plaintiff notifying Mr. Lind of Ms. Mendel's pregnancy on January 3, 2018 and requesting

9   leave; (2) Ms. Mendel's December 2016 email; and (3) Ms. Mendel informing Ms. Crouthamel

10  she was pregnant on December 5, 2017. (*See id.* at 3–10.) Additionally, Plaintiff's allegation of

11  an adverse employment activity concerns his termination. (*Id.* at 5.)

12         Assuming Plaintiff could establish he engaged in a protected activity, he cannot show a

13  genuine dispute of material fact exists as to the requisite causal link. The Court has found the

14  undisputed evidence shows Mr. Lind made the final decision to terminate Plaintiff before Mr.

15  Lind first learned of Ms. Mendel's pregnancy and any potential need for leave by Plaintiff. The

16  Court has also found it is undisputed Plaintiff has no knowledge the Hospital's Human Resources

17  staff relayed any information in Ms. Mendel's December 2016 email to Mr. Lind. Plaintiff

18  cannot create a triable issue of fact as to the causal link between his protected activity and the

19  adverse employment action when Mr. Lind as the decisionmaker was unaware of Ms. Mendel's

20  pregnancy, Ms. Mendel's December 2016 email, and any need for leave by Plaintiff at the time

21  Mr. Lind made the final termination decision. *See Vincent v. City of Cal. City*, No. 1:18-cv-0549-

22  JLT, 2019 WL 3547496, at *26 (E.D. Cal. Aug. 5, 2019), *aff'd*, 816 F. App'x 176 (9th Cir. 2020)

23  (granting summary judgment on a FEHA retaliation claim because the plaintiff failed to identify

24  any evidence the decisionmaker was aware of the plaintiff's protected activity before making the

25  termination decision). Therefore, the Court GRANTS Defendant's motion for summary

26  judgment as to Plaintiff's fifth claim for retaliation in violation of California Government Code

27  §§ 12940, *et seq.*

28  ///

G.     Claim Six: Failure to Prevent and Investigate Discrimination in Violation of California Government Code §§ 12940(j)–(k)

Defendant argues summary judgment is appropriate on Plaintiff's sixth claim because Plaintiff's inability to make out an underlying claim for discrimination under Plaintiff's fourth claim precludes any claim for failure to prevent or investigate discrimination.  (ECF No. 25-1 at 23–24.)  Plaintiff does not address his failure to prevent and investigate discrimination claim in his opposition.[18]  (*See* ECF No. 26.)

Under the FEHA, it is an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."[19]  Cal. Gov. Code § 12940(k).  "An actionable claim under [California Government Code] [§] 12940, subdivision (k) is dependent on a claim of actual discrimination . . . ."  *Scotch v. Art Inst. of California*, 173 Cal. App. 4th 986, 1021 (2009).

The Court has granted summary judgment for Defendant on Plaintiff's other FEHA claims, including Plaintiff's FEHA discrimination claim.  Plaintiff's claim for failure to prevent and investigate discrimination cannot survive summary judgment on the underlying FEHA discrimination claim.  Therefore, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's sixth claim for failure to prevent and investigate discrimination in violation of California Government Code §§ 12940(j)–(k).

H.     Claim Seven: Wrongful Termination in Violation of Public Policy

Defendant argues it is a public entity, (ECF No. 25-1 at 6), and on that basis Plaintiff's wrongful termination in violation of public policy claim is barred, (*id.* at 25).  Plaintiff does not address or reference Defendant's argument, (*see* ECF No. 26), and Plaintiff does not dispute

---

[18]     Plaintiff's failure to address Defendant's argument serves as Plaintiff conceding his failure to prevent and investigate discrimination claim.  *See Mariscal*, 52 F. Supp. 3d at 984; *M.J.L.H.*, 2019 WL 2249545, at *4 n.9.

[19]     While Plaintiff also identifies California Government Code § 12940(j) as a legal basis for his claim, (ECF No. 1 at 10), a claim for failure to prevent and investigate discrimination lies under California Government Code § 12940(k).  *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015).

19

1  Defendant is organized under California Health & Safety Code §§ 32000, *et seq.*, and that

2  Defendant is a public entity, (ECF No. 26-1 at 2).[20]

3       As part of California's Government Claims Act, "[California Government Code] [§] 815

4  abolishes common law tort liability for public entities." *Miklosy v. Regents of Univ. of Cal.*, 44

5  Cal. 4th 876, 899 (2008).  Therefore, California Government Code § 815 bars wrongful

6  termination in violation of public policy claims against public entities.  *Id.* at 899–900.

7       Healthcare districts organized pursuant to California Health & Safety Code §§ 32000, *et*

8  *seq.*, are public entities.  *Eden Twp. Healthcare Dist. v. Sutter Health*, 202 Cal. App. 4th 208, 213

9  (2011) (noting the defendant healthcare district was a public agency); *De Picciotto v. Seneca*

10  *Healthcare Dist.*, No. 2:19-cv-01297-TLN-DMC, 2020 WL 4339786, at *2 (E.D. Cal. July 28,

11  2020) (finding a defendant to be a public entity because it was a California healthcare district

12  hospital).

13       It is undisputed Defendant is organized under California Health & Safety Code §§ 32000,

14  *et seq.*, and that Defendant is a public entity.  Because of Defendant's undisputed status as a

15  public entity, California Government Code § 815 bars any wrongful termination in violation of

16  public policy claim against Defendant.  *See Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1079 (E.D. Cal.

17  2010) (granting summary judgment on the plaintiff's wrongful termination in violation of public

18  policy claim because of the defendant's status as a public entity).  Therefore, the Court GRANTS

19  Defendant's motion for summary judgment as to Plaintiff's seventh claim for wrongful

20  termination in violation of public policy.

21              I.    Claim Eight: Intentional Infliction of Emotional Distress

22       Defendant argues summary judgment is appropriate on Plaintiff's claim for intentional

23  infliction of emotional distress because the claim is barred by the Government Claims Act,

24  Plaintiff cannot establish the requisite extreme and outrageous conduct, and Plaintiff confirmed

25  the factual allegations underlying the claim in Paragraph 55 of the Complaint were incorrect and

26

27  [20]    Plaintiff's failure to address Defendant's argument serves as Plaintiff conceding his
   wrongful termination in violation of public policy claim.  *See Mariscal*, 52 F. Supp. 3d at 984;

28  *M.J.L.H.*, 2019 WL 2249545, at *4 n.9.

did not happen.  (ECF No. 25-1 at 25.)  Plaintiff does not address or reference Defendant's argument or the intentional infliction of emotional distress claim, (*see* ECF No. 26), and Plaintiff does not dispute that the allegations of Paragraph 55 of the Complaint are incorrect and did not happen, (ECF No. 26-1 at 21).[21]

Plaintiff's allegations underlying the intentional infliction of emotional distress claim are found in Paragraph 55 of the Complaint.  (ECF No. 1 at 11–12.)  It is undisputed these allegations are incorrect and did not happen.  Therefore, Plaintiff has conceded the allegations underlying his intentional infliction of emotional distress claim did not happen, and therefore, Plaintiff has conceded this claim.  Therefore, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's eighth claim for intentional infliction of emotional distress.

## IV.   CONCLUSION

Accordingly, the Court hereby GRANTS Defendant's Motion for Summary Judgment.  (ECF No. 25).  The Clerk of Court is directed to enter judgment in Defendant's favor and close the case.

IT IS SO ORDERED.

**DATED:  September 13, 2022**

Troy L. Nunley
United States District Judge

---

[21]     Plaintiff's failure to address Defendant's argument serves as Plaintiff conceding his intentional infliction of emotional distress claim.  *See Mariscal*, 52 F. Supp. 3d at 984; *M.J.L.H.*, 2019 WL 2249545, at *4 n.9.